UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-5560(DSD/JSM)

Nathan Smutka,

    Plaintiff,

v.    **ORDER**

City of Hutchinson and
Hutchinson Utilities
Commission, municipal
corporations, Paul Ackland,
Craig Lenz, Donald Walser,
David Wetterling, Marc Sebora,
and Patrick Spethman, each in
their individual capacity,

    Defendants.

    Richard T. Wylie, Esq. and Wylie Law Office, 701 Fourth Avenue South, Suite 500, Minneapolis, MN 55415, counsel for plaintiff.

    Julie A. Fleming-Wolfe, Esq. and Fleming-Wolfe Law Office, 325 Cedar Street, 1010 Degree of Honor Building, St. Paul, MN 55101, counsel for defendants.

This matter is before the court upon defendants' motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, defendants' motion is granted.

**BACKGROUND**

Plaintiff Nathan Smutka claims that defendants violated his federal constitutional right to due process when they terminated his employment.[1] Hutchinson Utilities Commission ("HUC") is an agency of defendant City of Hutchinson (the "City"). Defendants Paul Ackland, Craig Lenz, Donald Walser and David Wetterling were HUC commissioners and defendant Marc Sebora was Hutchinson City Attorney during the relevant time period. Defendant Patrick Spethman was the HUC Business Manager and Smutka's supervisor during the two years before Smutka was discharged. Smutka was employed by defendant HUC from April 1, 1969, until November 4, 2002. At the time of his discharge, he worked as metering supervisor. His employment was later reinstated with back pay and benefits, effective December 1, 2004.

Smutka allegedly engaged in two acts of misconduct before his termination in 2002. The first incident occurred in November 2000, when Smutka allegedly viewed pornography on his work computer. He denied the allegation and responded that he had received unsolicited pornographic pop-ups. As a result of an investigation, Smutka was disciplined and suspended for five days. HUC General Manager Clarence Kadrmas also directed Spethman to impose one year

---

[1] Plaintiff does not contest summary judgment in favor of defendants on his claims pursuant to the Minnesota Human Rights Act (see Compl. ¶¶ 78-81), Minnesota Statute section 181.81 (see Compl. ¶¶ 82-83) and the Minnesota Public Employee Labor Relation Act (see Compl. ¶¶ 84-90).

of probation, during which Smutka would be discharged if he violated any rule or policy.

The second act of misconduct occurred in October 2002 and involved an outburst by Smutka. He asserts that it resulted from years of conflict between he and Spethman, as well as his perception that Spethman was trying to get rid of him as an employee of HUC.[2] The conflicts that arose between Spethman and Smutka resulted in part from administrative cost-saving changes initiated by Spethman. For example, employees including Smutka were no longer assigned their own company vehicle or issued a cell phone or HUC credit card. Smutka alleges that Spethman's inquiry into his plans for retirement also caused tension and resentment.

A few months before the October 2002 incident, Kadrmas and Spethman hired Jan Sifferath as a business analyst to assume the customer service part of Smutka's job. Spethman directed Smutka to report to Sifferath and changed Smutka's title from accounts and metering supervisor to just metering supervisor. Spethman gave Sifferath Smutka's office and moved Smutka to a different office. Smutka alleges that these events lowered his work place status and created even greater tension between he and Spethman.

On October 22, 2002, the incident involving Smutka occurred in the HUC break room. No one had informed Smutka that his HUC credit

---

[2] It is undisputed that Spethman believed Smutka should have been fired for the pornography incident and that Spethman had talked to Kadrmas about wanting to terminate Smutka.

3

card had been cancelled.  When his subordinate attempted to use the credit card, it was declined.  Smutka learned of the failed transaction while in the break room with other employees.  He assumed that Spethman cancelled the card to embarrass him in front of his co-workers.  He then "engaged in a loud diatribe laced with expletives aimed at Mr. Spethman," who was not present.  (Wylie Decl. Ex. A (BMS Decision & Award, hereinafter "BMS Award"), at 5.)  One employee reported the incident to Sifferath, who met with Smutka the next day.  She suggested that Smutka meet with Spethman and try to work things out.

Sifferath also informed Spethman of the incident, but he refused to meet with Smutka.  Rather, Spethman asked City Attorney Marc Sebora to begin investigating the incident.  Sebora assigned the investigation to the City's human resources director, Brenda Ewing.  Ewing and Sebora met with Smutka on October 24, 2002, and informed him of (1) the allegations against him, (2) his five-day suspension pending the outcome of the investigation and (3) his rights during the investigative process.  Smutka also had a chance to respond to the allegations presented at the meeting.  He told Ewing and Sebora that he had been very upset about not knowing of the cancelled credit card and that he had asked for a meeting with Spethman.  He also denied making some of the statements attributed to him.

The next day, Ewing interviewed the employees present in the break room during the incident. Sebora interviewed the same employees on October 28, 2002, to confirm their responses. On October 30, Sebora and Ewing met with Smutka and his attorney, Dan Prochnow. Prochnow informed them that Smutka felt Spethman had been taking away his job responsibilities and that he denied using certain profanities or engaging in insubordination. Prochnow also stated that Smutka would submit a written response to the allegations by November 1, 2002. During the entire investigative process, Kadrmas' only role was to sign Smutka's letter of suspension. Kadrmas testified that he planned to investigate the matter himself when he returned from out of town and that he did not authorize Ewing and Sebora's investigation.

The HUC commissioners had a regularly scheduled HUC board meeting on October 30, 2002. Prior to the meeting, Sebora told Commissioner Lenz that he thought Smutka should be terminated. Spethman also met with Commissioners Lenz and Wetterling before the meeting to discuss the results of the investigation and express his concern that Kadrmas would not sufficiently discipline Smutka, referring to the incident in 2000. Smutka alleges that Spethman also lied to Wetterling that the break room incident was a personal encounter.

After the regularly scheduled meeting, the commissioners conducted a closed session to discuss Smutka's alleged misconduct.

At the session's conclusion, the commissioners ordered Kadrmas to terminate Smutka's employment, over Kadrmas' objection. On November 4, 2002, Sebora and Ewing met with Smutka and his new attorney, Ian Laurie. Sebora gave Smutka the termination letter signed by Kadrmas, which included a notice of appeal rights. Two days later, Laurie filed a grievance on Smutka's behalf, claiming wrongful termination. Kadrmas forwarded the grievance to Sebora, and HUC held a hearing on November 22, 2002. Following arguments by Sebora and Laurie, HUC determined that just cause supported Kadrmas' decision to terminate Smutka's employment.

On September 11, 2003, Smutka petitioned the Bureau of Mediation Services ("BMS") for independent review. Smutka filed this action in federal court on October 16, 2003, alleging violations of state law and of his constitutional rights to procedural and substantive due process. In June and July of 2004, Smutka had a full trial-like hearing before a BMS hearing officer. The hearing officer found that the City did not terminate Smutka's employment in a manner consistent with its policies and procedures. Smutka was ordered reinstated with full back pay and benefits, which became effective December 1, 2004. Defendants now move for summary judgment on all claims. Smutka challenges defendants' motion only as to alleged violations of his right to due process under the Fourteenth Amendment, for which he seeks nominal damages and damages for personal injury and distress.

**DISCUSSION**

**I.   Factual Record**

Plaintiff argues that the findings and conclusions of the BMS hearing officer are binding. The court must give the facts found by a state administrative agency preclusive effect if the "agency has acted in a judicial capacity concerning a matter properly before it, and has provided the parties an adequate opportunity to litigate." Fife v. Bosley, 100 F.3d 87, 89 (8th Cir. 1996) (citing Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)). However, preclusion is inappropriate when the agency analyzed the same facts "under similar but significantly different criteria in the earlier adjudication." Id. at 89-90. For example, an administrative agency that decides the issue of whether a public employee violated departmental rules does not have preclusive effect upon a later adjudication of constitutional issues. See Parkus v. Delo, 135 F.3d 1232, 1235 (8th Cir. 1998) (agency affirmed termination based upon violation of departmental rules, but former employee could give contradictory evidence in trial of constitutional violations).

It is undisputed that the BMS hearing officer acted in a judicial capacity concerning the issue whether the City terminated Smutka's employment in a manner consistent with its policies and procedures. Further, Smutka and the City had an adequate opportunity to litigate that issue. However, whether the City and the other named defendants in this action violated Smutka's

7

constitutional rights to due process under the Fourteenth Amendment involves significantly different criteria than those involved in the issue before BMS.[3] See de Llano v. Berglund, 282 F.3d 1031, 1035 (8th Cir. 2002) (neither state law nor organizational policy determines what constitutes adequate due process). Therefore, the court will not give preclusive effect to the factual findings of the BMS hearing officer.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)).

---

[3] Plaintiff cites Falgren v. State Bd. of Teaching, 545 N.W.2d 901, 908 (Minn. 1996), for the proposition that the issues before BMS and before this court need not be identical for factual preclusion to apply. However, in granting preclusive effect, the court in Falgren found that the same criteria applied to determine the issue in the underlying proceeding as in the later proceeding. See id. at 906 (immoral conduct is basis for termination as well as for revocation of teaching license). By contrast, whether the City's policies and procedures have been complied with involves vastly different criteria than whether defendants have violated Smutka's right to constitutional due process.

A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**III. Procedural Due Process**

Plaintiff alleges that defendants violated his Fourteenth Amendment right to procedural due process by failing to provide (1) notice, (2) an opportunity to be heard and (3) a formal post-termination hearing. Defendants respond that plaintiff received all process due, and in the alternative, any inadequacies were cured by adequate post-deprivation remedies. Due process is implicated when the government acts in a manner that deprives an individual of a recognized liberty or property interest. See Bd.

of Regents v. Roth, 408 U.S. 564, 577 (1972). In analyzing due process claims, courts must begin with a two-step inquiry, asking "first whether the [plaintiff has] a protected interest at stake, and if so, what process is due." Bliek v. Palmer, 102 F.3d 1472, 1475 (8th Cir. 1997). Here, it is undisputed that Smutka had a protected property interest in his employment. The court then asks whether the state's deprivation of that interest occurred without the process that is due. See id. at 1475. As discussed below, individuals with a protected employment interest have a right to particular procedures at both the pre-termination and post-termination stages.

    A.    **Pre-Termination Procedure**

Those with a protected interest in their employment have pre-termination rights to "be given notice of the charges against them, an explanation of the evidence and an opportunity to be heard." de Llano v. Berglund, 282 F.3d 1031, 1034-35 (8th Cir. 2002) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)). Sufficient notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The notice must also "permit adequate preparation for ... an impending hearing." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978). In turn, the

10

opportunity to respond may be in person or in writing and serves as "an initial check against mistaken decisions." Loudermill, 470 U.S. at 545.

In this case, defendants accorded Smutka the three elements of pre-termination process set forth in Loudermill. He received notice of the charges against him, an explanation of the evidence against him concerning the break room incident and numerous opportunities to respond to those investigating the charges and to the HUC. However, Smutka challenges the sufficiency of the notice and explanation of evidence, as well as the meaningfulness of his opportunity to respond.

Plaintiff alleges that he received inadequate notice because defendants failed to tell him that the pornography incident in 2000 was also a basis for discharge. In order to enable a meaningful opportunity to respond, only the charges set forth in the notice may be used to justify termination. See O'Keefe v. U.S. Postal Serv., 318 F.3d 1310, 1315 (Fed. Cir. 2002); Peery v. Brakke, 826 F.2d 740, 743 (8th Cir. 1987) (termination letter included incidents of which plaintiff had not received prior notice). Although plaintiff has presented evidence that HUC considered Smutka's prior alleged misconduct, the termination letter only cited misconduct related to the break room incident. Because Smutka was apprised of the charges that were used to justify his termination, the court finds that the notice was sufficient. See

11

Riggins v. Bd. of Regents of Univ. of Neb., 790 F.2d 707, 711 (8th Cir. 1986) (no notice as to prior work history did not violate due process because it was not stated as basis for discharge and comprised only minor part of meeting to determine discipline).

Plaintiff alleges that defendants failed to provide an explanation of the evidence against him because they withheld details of witness accounts. In particular, plaintiff contends that Sebora and Ewing failed to tell him and the commissioners that two of three witnesses described his outburst as lasting a minute or less, instead of ten minutes as reported by the third witness. Further, plaintiff asserts that he was falsely told Kadrmas made the decision to terminate him and that the commissioners were falsely told that Spethman was present during Smutka's outburst[4] and that Smutka threw a chair.

"The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill advised personnel decisions." Lee v. Hutson, 810 F.2d 1030, 1032 (11th Cir. 1987). Accordingly, a governmental employer's failure to disclose exculpatory evidence during pre-termination proceedings may be remedied by the availability of adequate post-termination procedures. Id. at 1033.

---

[4] Plaintiff points to a declaration by Kadrmas that Wetterling said Spethman had lied about being present during the break room incident. In response, defendants point to Wetterling's testimony that he misunderstood Spethman and that he was not lied to. For purposes of this motion, the court will assume that plaintiff can support his allegation.

Indeed, mandating disclosure of exculpatory evidence could "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Loudermill, 470 U.S. at 546. Similarly, an employer need not disclose all the details of the charges nor provide the names of witnesses or accusers. See Schleck v. Ramsey County, 939 F.2d 638, 642 (8th Cir. 1991). For these reasons, the court rejects Smutka's argument that he had a due process right to disclosure of exculpatory or detailed evidence during pre-termination proceedings.[5]

Concerning defendants' failure to inform plaintiff that Kadrmas did not make the decision to terminate him, such a disclosure is not required under any of the three elements of pre-termination process. Finally, as to the alleged presentation of false evidence to the commissioners, "[d]ismissals for cause will often involve factual disputes." Loudermill, 470 U.S. at 543. It is for that very reason that an employee has an opportunity to respond and present his version of events before being deprived of his employment benefits. Because plaintiff had such an opportunity

---

[5] Plaintiff cites Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989), to support his argument that withholding exculpatory evidence is a violation of due process. However, Goodwin involved a criminal prosecution, which requires significantly more procedural due process than a pre-termination notice and opportunity to respond. Similarly, his citation from King v. University of Minnesota, 774 F.2d 224 (8th Cir. 1985), addresses the amount of process required both pre- and post-termination, which goes beyond the scope of notice and an opportunity to be heard. Therefore, plaintiff's legal citations are unavailing.

to dispute the allegedly false evidence presented, pre-termination due process requirements were met. For all of the above reasons, plaintiff has failed to show that defendants violated his right to adequate pre-termination process.

Even if plaintiff could establish that defendants violated his right to pre-termination process, an adequate post-termination hearing provided by the state remedies those alleged violations. The Supreme Court held in Parratt v. Taylor, 451 U.S. 527 (1981), that a deprivation of property that occurs "as a result of the unauthorized failure of agents of the State to follow established state procedure" can be remedied by post-deprivation procedures. Id. at 543; see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982) (rule in Parratt applies unless complainant challenged "established state procedure").

Here, plaintiff does not challenge established state procedure, but rather primarily refers to random acts by Spethman, Sebora and Ewing to show violations of procedural due process. Plaintiff argues that such violations occurred "in the execution of HUC's procedure." However, plaintiff does not specify the procedures pursuant to which defendants were acting when they allegedly withheld exculpatory evidence, presented false information and committed similar acts. Further, plaintiff has suggested that the commissioners acted contrary to HUC procedure when they instructed Kadrmas to terminate him. The court finds

that such acts were random and unpredictable. To the extent that they were unauthorized acts and deprived plaintiff of pre-termination due process, the full hearing provided by BMS remedied any such deprivation because the hearing satisfied post-deprivation due process requirements, as discussed below.

### B.   Post-Termination Procedure

In addition to pre-termination proceedings, persons with a protected employment interest must also be afforded post-termination administrative review. Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). So long as state law provides for a full post-termination hearing, due process requirements are met. See Loudermill, 470 U.S. at 546-47. Defendants argue that plaintiff received an adequate post-termination hearing through BMS. In response, plaintiff alleges that he never received a post-termination hearing from the Commission and that the November 22, 2002, meeting was a "sham." However, plaintiff successfully petitioned BMS for independent review pursuant to state law. See Minn. Stat. § 179A.25. He has cited no authority to support his argument that HUC must be the agency to provide the post-termination hearing. Furthermore, he does not challenge the adequacy of the BMS hearing, which lasted four days and resulted in his reinstatement with back pay and benefits. Therefore,

plaintiff's argument is without merit.  The court finds that he received an adequate post-termination hearing.

For all of the above reasons, summary judgment in favor of defendants is warranted on plaintiff's procedural due process claims.

**IV.   Substantive Due Process**

Plaintiff alleges that a series of intentional acts by defendants Spethman and Sebora violated his substantive due process rights.  To determine whether an individual's substantive due process rights have been violated the court asks "whether the officials acted in an arbitrary or capricious manner, or so as to shock the conscience."  Herts v. Smith, 345 F.3d 581, 587 (8th Cir. 2003).  But see Young v. City of St. Charles, 244 F.3d 623, 628 (8th Cir. 2001) (government action must be more than arbitrary, capricious, or in violation of state law).  Arbitrary and capricious decisions to discharge a public employee are those based upon reasons that are trivial or "wholly unsupported by a basis in fact."  Herts, 345 F.3d at 587.  To meet the conscience shocking standard, the government action must be "sufficiently outrageous" or "truly irrational."  Young, 244 F.3d at 628.

The facts as alleged by plaintiff do not show that the decision to terminate him was based on trivial or wholly unsupported reasons.  Nor were the actions by defendants sufficiently outrageous to support a substantive due process claim.

16

At most, the facts alleged demonstrate a mutual animus between Spethman and Smutka that led to inappropriate behavior by both of them. Therefore, summary judgment is warranted.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. No. 9] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 5, 2005

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court